Angela Bohanon, James Chapman, and Debra Poole (hereinafter sometimes referred to collectively as "the children"), the plaintiffs below, appeal from the trial court's April 25, 2006, judgment finding that Bobby Edwards had established his ownership of certain parcels of land in the J.B. Carlisle Estate Subdivision through adverse possession. We reverse.
 Background
The evidence before the trial court indicated the following: In 1960, William Robinson ("William") and his parents, Archie Robinson ("Archie") and Annie Mae Robinson ("Annie Mae"), together acquired a one-acre parcel of property in the J.B. Carlisle Estate Subdivision (hereinafter referred to as "parcel 11"). In that same year, Archie and Annie Mae built a house on parcel 11 and, upon its completion, began living in the house on the property. In 1970, William acquired a 4.5-acre parcel ("parcel 10") adjacent to parcel 11. Finally, *Page 779 
in 1973, William acquired another 8.81-acre parcel ("parcel 12"), which also abutted parcel 11.
William died intestate in May 1979. Although he had never married, he was survived by three children, Angela Bohanon, James Chapman, and Debra Poole, who, at the time, were ages 18, 10, and 5, respectively.[1] Shortly after William died, Edwards moved into the house on parcel 11 with his great-uncle, Archie, and his great-aunt, Annie Mae. Edwards testified that when he began living with Archie and Annie Mae they were raising potatoes, chickens, and hogs on parcel 11.
In 1980, Archie died; he left a will, in which he devised all of his property to Annie Mae. Annie Mae and Edwards continued living in the house on parcel 11. Then, in 1982, Edwards's wife and two children moved into the house on parcel 11 with Annie Mae and Edwards.
In 1983, the house on parcel 11 was destroyed in a fire. At the time of the fire, Annie Mae, Edwards, and Edwards's wife and two children were living in the house. In February 1984, Annie Mae purported to deed parcel 11 to Edwards and to retain a life estate for herself. Edwards recorded the deed and mortgaged the land on parcel 11 to rebuild the house that had burned down. Thereafter, he paid the mortgage and the insurance on the house. Edwards also made other improvements to the house after it had been rebuilt.
In March 1996, Edwards executed a warranty deed, purporting to convey parcel 11 back to Annie Mae; Edwards and his family and Annie Mae continued to live on parcel 11 until Annie Mae died in April 1997. Annie Mae's will devised all of her property to Edwards. The deed purporting to convey parcel 11 from Edwards to Annie Mae was recorded in August 1997, after Annie Mae's death. Edwards continued living in the house situated on parcel 11 from the time William died in 1979 until the time of trial.
Angela Bohanon ("Angela"), one of William's children, filed suit in November 1999, seeking to quiet title to parcels 10, 11, and 12; she also requested that the court order a sale of the properties for division among the owners. Edwards answered the complaint, claiming superior title to the properties in question by virtue of Annie Mae's will. Angela later amended her complaint to include William's other children, James Chapman ("James") and Debra Poole ("Debra"), as plaintiffs.
Initially, Edwards argued that William had died intestate, leaving no spouse, siblings, or children, and that, therefore, William's interest in each of the parcels at issue in this case passed by intestate succession to Archie and Annie Mae. However, Angela submitted the affidavits of two of William's cousins, both of whom asserted that after Angela's birth William acknowledged her as his daughter; the cousins also asserted that William treated Angela as his daughter and that Archie and Annie Mae — William's parents — had helped raise Angela. Additionally, there is evidence in the record to indicate that William's obituary stated that he was survived by three children.[2] *Page 780 
After an ore tenus hearing, the trial court dismissed the children's complaint. The trial court concluded that their claims were barred by the statute of limitations established in § 6-2-33(2), Ala. Code 1975 (establishing a 10-year limitations period for an action seeking to recover lands), and in § 6-2-8(a), Ala. Code 1975 (establishing a maximum 20-year limitations period for any action seeking to make an entry on lands or to enter a defense founded on the title to real property, if that cause of action accrued while the plaintiff was a minor).
The children appealed, and we reversed. See Bohanon v.Edwards, 875 So.2d 309 (Ala.Civ.App. 2003) ("BohanonI"). In Bohanon I, we concluded that the trial court had improperly dismissed the children's claims, and we remanded the cause to the trial court to make findings of fact as to whether Edwards's possession met the requirements to establish adverse possession as to each parcel.
Edwards thereafter amended his answer, asserting that William had been survived by his parents, Archie and Annie Mae, and three children, Angela, James, and Debra; he then counterclaimed, seeking to quiet title or, in the alternative, to impose an equitable lien on all of the properties at issue in the action. Edwards claimed superior title to each of the parcels by adverse possession for a period exceeding 20 years; he also asserted that he had acquired title to parcel 11 by devise under Annie Mae's will.
On remand, the trial court conducted another ore tenus hearing. On April 26, 2006, the trial court entered a judgment in favor of Edwards, finding that Edwards had established his title to each of the parcels at issue in this case, thereby obviating his claim seeking an equitable lien on the properties.[3] In its judgment finding that Edwards had acquired each of the parcels by adverse possession, the trial court stated:
 "The Court further finds that the defendant, Bobby Edwards, has established ownership of the disputed property by adverse possession for over twenty years. The evidence clearly indicates that Bobby Edwards moved onto the property immediately after the death of William Robinson on May 2, 1979, and has continued in actual possession of the property until the present time. During said time, he and those through whom he claims, Archie Robinson and Annie Mae Robinson, have been in notorious, open and hostile possession of the property, and have claimed the property as their own. The evidence establishes that the defendant, Bobby Edwards, has paid the taxes on the property since 1979. He has also had the timber on the property cut on one occasion, rented the houses situated on the property, mortgaged the property, and generally dealt with the property as his property. His title to the property was never disputed by anyone until this action was filed on November 24, 1999.
 "In this state, adverse possession by prescription acts as an absolute rule of repose, since a lapse of twenty years during which there has been continuous adverse possession is considered a sufficient period for the recognition of rights *Page 781 
based on adverse possession. Ala. Code § 6-2-8(a) (1975)."
The children appeal.
 Standard of Review
In Lockhart v. Corcoran, 494 So.2d 93
(Ala.Civ.App. 1986), this court outlined the standard of review applicable in adverse-possession cases:
 "`Whether the evidence establishes adverse possession is a question of fact, the determination of which, when made upon evidence presented ore tenus, is favored with a presumption of correctness and will not be disturbed on appeal unless plainly wrong or manifestly unjust.' Tidwell v. Strickler, 457 So.2d 365, 368 (Ala. 1984). The trial court's judgment in such a case need only be supported by credible evidence. Jemison v. Belcher, 368 So.2d 849
(Ala. 1979)."
494 So.2d at 93.
 Discussion "Under Alabama's law there are two types of adverse possession. The first type is statutory adverse possession under Ala. Code (1975), § 6-5-200. Under this statute, the party claiming the land must have possessed the land for ten years and must also hold the land under color of title, have paid taxes on the property for ten years, or have derived title by descent or devise. Tidwell, 457 So.2d at 368.
 "The second type of adverse possession is adverse possession by prescription, which requires that the claimant have possessed the land for twenty years. Hayden v. Robinson, 472 So.2d 606
(Ala. 1985); Tidwell, 457 So.2d at 368.
 "Both types of adverse possession require that the claimant's possession be `actual, exclusive, open, notorious, and hostile.' Tidwell, 457 So.2d at 368. The burden rests upon the claimant to prove by clear and convincing evidence that his possession of the land meets these elements. Tidwell, 457 So.2d at 368; Grooms v. Mitchell, 426 So.2d 820 (Ala. 1983)."
Lockhart v. Corcoran, 494 So.2d at 94. Additionally, § 6-5-200(a), Ala. Code 1975, addresses statutory adverse possession and provides, in part:
 "(a) Adverse possession cannot confer or defeat title to land unless:
 "(1) The party setting it up shall show that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for 10 years before the commencement of the action;
 "(2) He and those through whom he claims shall have annually listed the land for taxation in the proper county for 10 years prior to the commencement of the action if the land is subject to taxation; or
 "(3) He derives title by descent cast or devise from a predecessor in the title who was in possession of the land."
In this case, Edwards testified that he never claimed ownership of the three parcels against Annie Mae and that he never intended to adversely possess against her. Because Annie Mae died only two years before Angela filed this action to quiet title, the only way that Edwards could succeed in his claim to the three parcels through adverse possession against the children would be to "tack on" his period of purported adverse possession to a purported period of adverse possession by Archie and/or Annie Mae against the children. The doctrine of "tacking" allows an adverse possessor to add or "tack" his *Page 782 
time of possession onto that of a previous adverse possessor in order to reach the required statutory period. Stricklandv. Markos, 566 So.2d 229, 233 (Ala. 1990).
 Parcel 11
Archie and Annie Mae's possession of parcel 11 at the time of William's death was permissive; Archie and Annie Mae and William were cotenants of parcel 11, and there was no evidence presented to indicate that Archie and Annie Mae's possession was adverse to William. When William died, his interest in each of the three parcels passed to his children by intestate succession. See former § 43-3-1(1), Ala. Code 1975 ("The real estate of persons dying intestate, as to such estate descends, . . . to the children of the intestate, or their descendants, in equal parts.") (repealed by Ala. Acts 1982, Act No. 82-399). Thus, the children became cotenants of parcel 11 with Archie and Annie Mae, because Archie and Annie Mae were cotenants with William before his death. See Bradley v.Demos, 599 So.2d 1148 (Ala. 1992) (recognizing that when a cotenant of real property dies intestate, that cotenant's interest in the real property passes through intestacy laws to his heirs and those heirs became cotenants of the real property).
 "The possession of one tenant in common is prima facie presumed to be the possession of all, and it does not become adverse to the cotenants unless they are actually ousted, or, short of this, unless the adverse character of the possession of one is actually known to the others, or the possession of the one is so open and notorious in its hostility and exclusiveness as to put the other tenants on notice of its adverse character."
Monte v. Montalbano, 274 Ala. 6, 11, 145 So.2d 197,200 (1962).
In this case, the 1984 deed from Annie Mae to Edwards purportedly transferred title to parcel 11 to Edwards. However, as established above, at the time of Annie Mae's conveyance to Edwards, she was a mere cotenant of the property along with William's children. A cotenant may not convey a property interest greater than that which he or she owns. CenterLine Enters., Inc. v. Washington, 465 So.2d 1129, 1130
(Ala. 1985). Thus, the deed from Annie Mae to Edwards only transferred title to a 2/3 interest in parcel 11, and, upon that transfer, Edwards became situated as a cotenant with the children.
Edwards presented evidence to establish that between 1985 and 1997 parcel 11 was listed in his name for tax purposes and that he paid all the property taxes due on parcel 11. If not for the children's cotenancy in parcel 11 during that entire period, that evidence might have been sufficient to meet the requirements of statutory adverse possession under §6-5-200, Ala. Code 1975.
However, in 1985, the Alabama Supreme Court stated:
 "Although the customary acts of ownership would be sufficient to impute notice of adverse possession to all not claiming in privity with the possessor, that principle does not apply to his tenants in common. The possession of a tenant in common, without more, does not operate as a disseisin of his cotenants, because in law he is looked upon as holding for them. Kidd v. Borum, 181 Ala. 144, 61 So. 100 (1913)."
Washington, 465 So.2d at 1131. "[A] cotenant is entitled to the use of the whole property until there is an ouster or exclusion of the cotenant from the use and enjoyment of his interest in the property." Porter v. Henderson,204 Ala. 564, 565, 86 So. 531, 531 (1920). *Page 783 
In Beard v. Bates, 418 So.2d 862 (Ala. 1982), a mother and a minor child inherited land from the child's father. The mother and the child subsequently died, and the heirs of each claimed title to the property. The Alabama Supreme Court concluded that the heirs of the minor child, who claimed title by adverse possession, had become tenants in common with the heirs of the mother and, therefore, could not have held the property adversely to their cotenants without strong evidence of ouster of those cotenants' interests. The Court in Beard recognized that an ouster sufficient to support an adverse-possession claim against a cotenant required "`some express denial of title and right to possession of the fellow cotenant brought home to him openly and unequivocally.'"418 So.2d at 864 (quoting Tyson v. Jackson,364 So.2d 1140, 1142 (Ala. 1978)).
In the present case, we can find no evidence of ouster of the children as cotenants by either Annie Mae or Edwards. Rather, Annie Mae and Edwards continued to live on parcel 11 as they had done at the time of William's death. There is no evidence indicating that Annie Mae or Edwards notified the children of their intent to deny the children's rights as cotenants, i.e., to effect an ouster, or that Annie Mae ever possessed such an intention. See Sumner v. Hill, 157 Ala. 230,47 So. 565 (1908). Based on the foregoing, we conclude that the trial court erred in its determination that Edwards established ownership of parcel 11 by adverse possession.
 Parcels 10 and 12
Edwards also claims ownership by adverse possession to parcels 10 and 12. In support of his assertion that he has superior title to parcels 10 and 12, Edwards testified that he had paid all the taxes on both parcels; that he had rented out the house that stood on parcel 10 and had made improvements to that rental house; that he had cut timber from parcel 12; and that he had "picked up paper and stuff" throughout the years to maintain the cleanliness of the properties.
Edwards testified, however, that the improvements to the rental house were made in approximately 1984 and that the timber was cut "in the 1980s," after the house on parcel 11 had been rebuilt. Thus, those acts of possession did not begin and continue for at least 20 years before November 24, 1999 — the date Angela filed this action — thereby precluding Edwards from satisfying the time requirements of adverse possession by prescription.
Additionally, although Edwards is listed as having paid the taxes for parcels 10 and 12 for a significant number of years, those taxes were paid in William's name, rather than in Edwards's name, up until the time of trial. In Jones v.Jones, 423 So.2d 158 (Ala. 1982), the Alabama Supreme Court discussed whether the payment of taxes for a 10-year period would satisfy the requirements of § 6-5-200(a)(2). The Court stated: "We cannot infer that `paying' taxes is the same as `listing' the land for taxation in the name of the party claiming by adverse possession. It is possible to pay taxes on a parcel of land without having it listed in the payor's name."423 So.2d at 161. Because Edwards did not pay the taxes on parcels 10 and 12 in his name, Edwards does not meet the requirements for statutory adverse possession with regard to parcels 10 and 12.
With regard to Edwards's attempt to "tack on" to Archie and Annie Mae's purported adverse possession of parcels 10 and 12, there is no evidence in the record indicating that Archie and Annie Mae's possession of parcels 10 and 12 was ever hostile to the children. "`Possession *Page 784 
is hostile when the possessor holds and claims property as his own, whether by mistake or willfully. Smith v. Brown, [282 Ala. 528, 213 So.2d 374 (1968)].'" Strickland v.Markos, 566 So.2d 229, 233 (Ala. 1990) (quotingReynolds v. Rutland, 365 So.2d 656, 658 (Ala. 1978)).
Although Edwards testified that Archie and Annie Mae maintained the land "as [if] it was theirs," his only support for that statement was that Archie had had the land surveyed. Although Annie Mae participated in renting the house on parcel 10, Edwards testified that he was unsure of what Annie Mae did with the rental money after it went into the bank. Therefore, we find nothing in the record that suggests that Archie and Annie Mae's activities with regard to parcels 10 and 12, or their maintenance of the land, was hostile toward the children.
The only other evidence presented that could potentially support a finding that Archie or Annie Mae were in any way holding parcels 10 and 12 as their own, rather than for their grandchildren, is a deed, dated 1980 and signed by Annie Mae, that purports to transfer a portion of parcel 12 to Gene Russell. However, subsequent to the execution of Annie Mae's deed to Russell, Beulah Mary Russell executed another deed in 1984; that deed states: "This deed is given to replace and correct that certain deed from Annie Mae Robinson, a widow, to Gene Russell dated Sept. 22, 1980 and recorded on Card 007575, for that the grantor therein, Annie Mae Robinson, did not have title to subject lands." The record does not explain the events that prompted this reparation.
Regardless of Beulah Mary Russell's subsequent deed, Annie Mae's deed of 1980 does not, standing alone, signify that Annie Mae was holding the property adversely to her grandchildren. Furthermore, even if the trial court relied on the existence of the 1980 deed to support a finding of hostile possession on Annie Mae's behalf, it still would not satisfy the requirements of adverse possession by prescription because Angela filed suit within 20 years of the date of Annie Mae's deed.
We conclude that the record before us fails to establish by credible evidence that Archie and Annie Mae were holding parcels 10 and 12 adversely to the children. Without strong evidence of adverse possession by Archie and Annie Mae, Edwards cannot establish his claim of adverse possession against the children. Therefore, we conclude that the trial court erred in finding that Edwards had adversely possessed those parcels. We reverse the trial court's April 26, 2006, judgment and remand the cause to the trial court with instructions to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
[1] There was evidence presented indicating that William may have been survived by a fourth child, Tony Mitchell Caldwell Robinson, who was later added as a party; a guardian ad litem was appointed to represent his interests. The guardian ad litem is not a party to this appeal.
[2] Archie's obituary stated that he was survived by three grandchildren; Annie Mae's obituary stated that she was survived by three grandchildren, specifically naming Angela, James Chapman, and Debra Poole.
[3] With regard to the children's claim to quiet title, the court treated the claim as an action under Ala. Code 1975, §6-6-560, rather than as an action under Ala. Code 1975, §6-6-540, as asserted in the complaint. The court decided that the children did not fall within the requirements of §6-6-560 and, therefore, that they were not entitled to quiet title to the lands under that statute. The children have not asserted on appeal that that determination by the trial court was in error.