BRYAN, Judge.
 

 The defendants, Jackie Holifield and Rita Holifield, appeal a judgment establishing a fence line as the boundary line between their land and the land of the plaintiffs, Debra O. Smith (“Debra”), Frank M. Overstreet (“Frank”), and Alberta Overstreet (“Alberta”). We reverse the trial court’s judgment insofar as it erred in describing the location of the fence line, and we remand the case for the trial court to correct that error. In all other respects, we affirm the trial court’s judgment.
 

 
 *1175
 
 Alberta, the mother of Debra and Frank, owns record title to a life estate in the east half of the southeast quarter of the southwest quarter of Section 23 in Mobile County (“the east half’). Debra and Frank own record title to the remainder interest in the east half. The Holi-fields own record title to the west half of the southeast quarter of the southwest quarter of Section 23 in Mobile County (“the west half’).
 

 In August 2004, Joe Williams, who owned the west half at that time, had the west half surveyed by a licensed land surveyor to determine the location of the boundary line between the west half and the east half. The resulting survey drawing depicted the location of that boundary line as indicated by the description of the west half in the deeds in Williams’s chain of title (“the deed line”). The survey drawing also depicted a fence line located a short distance west of the deed line. Williams, who knew that fences had been located in the vicinity of the fence line depicted on the survey drawing since the 1940s, offered to pay Alberta money if she would convey to him her interest in the gore of land located west of the deed line and east of the fence line depicted on the survey drawing. However, Alberta, indicating that she considered the fence line depicted on Williams’s survey to be the boundary line between the west half and the east half, declined to convey her interest in that gore.
 

 In February 2006, the Holifields, with knowledge that the owners of the east half contended that the fence line depicted on Williams’s survey drawing was the boundary line between the west half and the east half, acquired title to the west half from Williams.
 

 In May 2006, Alberta, Debra, and Frank sued the Holifields, alleging that the Holi-fields claimed record title to certain land located east of a fence that had stood for more than 20 years; that Alberta, Debra, and Frank or their predecessors in title had possessed that land and farmed it for more than 20 years; and, therefore, that, by virtue of adverse possession, they owned that land. They sought (1) a determination that, by virtue of adverse possession, they owned that land and (2) the establishment of the location of the true boundary line between the west half and the east half. Their complaint purported to give the legal description of the land they claimed to own by virtue of adverse possession; however, that legal description, which described land located west of the west half, was erroneous.
 

 Answering the complaint, the Holifields denied that Alberta, Debra, and Frank owned any of the land located west of the deed line. The Holifields also asserted a counterclaim seeking the establishment of the location of the true boundary line between the west half and the east half.
 

 Thereafter, the trial court held a bench trial at which it received evidence ore ten-us. At the close of all the evidence, the Holifields moved the trial court to dismiss the action on the ground that the failure of the complaint filed by Alberta, Debra, and Frank to describe accurately the land they were claiming they owned by virtue of adverse possession deprived the trial court of subject-matter jurisdiction. The trial court denied the Holifields’ motion to dismiss.
 

 In a posttrial brief they submitted before the trial court entered its judgment, the Holifields again asserted that the failure of the complaint to describe accurately the land Alberta, Debra, and Frank were claiming to own by virtue of adverse possession deprived the trial court of subject-matter jurisdiction.
 

 
 *1176
 
 Thereafter, the trial court entered a judgment finding that the line of a fence erected in 1940 (“the 1940 fence line”) by Bluett Tanner, who owned the west half at that time, was the boundary line between the west half and the east half. In so holding, the trial court implicitly found that Alberta, Debra, and Frank or their predecessors in title had acquired, by adverse possession, the portion of the west half bounded on the west by the 1940 fence line and bounded on the east by the deed line. The legal description of the 1940 fence line contained in the judgment, however, erroneously located it to the west of the west half.
 

 Following entry of the judgment, the Holifields timely appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
 

 We must first determine whether we have jurisdiction over this appeal. The Holifields argue that the failure of the complaint to describe accurately the land that Alberta, Debra, and Frank claimed to own by virtue of adverse possession deprived the trial court of subject-matter jurisdiction. If the trial court did not have subject-matter jurisdiction, its judgment is void, and a void judgment will not support an appeal. Thus, if the trial court lacked subject-matter jurisdiction, we would not have jurisdiction over an appeal from the trial court’s judgment.
 

 The Holifields ground their argument that the trial court lacked subject-matter jurisdiction on § 6-6-541, Ala.Code 1975, which provides that a complaint in a quiet-title action “must describe the lands [at issue] with certainty.” However, § 6-6-541 itself does not state that compliance with that requirement is a prerequisite to the trial court’s exercising subject-matter jurisdiction over the quiet-title action. Moreover, the Holifields have not cited to us any caselaw standing for the proposition that compliance with that requirement is a jurisdictional requirement. In the absence of any law so holding, we conclude that, although compliance with that requirement is a condition of obtaining relief in a quiet-title action, it is not a condition of the trial court’s exercising subject-matter jurisdiction.
 

 In this particular case, by the time the Holifields challenged the failure of the complaint to describe accurately the land that Alberta, Debra, and Frank were claiming to own by virtue of adverse possession, Alberta, Debra, and Frank had introduced, without objection by the Holi-fields, evidence at trial indicating that the land they claimed to own by virtue of adverse possession was bounded on the east by the deed line and bounded on the west by the 1940 fence line, which was a straight line running parallel to, and approximately 17 feet west of, the deed line. The introduction
 
 of that
 
 evidence without objection by the Holifields cured the erroneous description of the land contained in the complaint.
 
 See
 
 Rule 15(b), Ala. R. Civ. P. (“When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.”). Accordingly, the trial court did not err in denying the motion to dismiss the action the Holifields made at the close of all the evidence.
 

 With regard to the merits of the trial court’s judgment, the Holifields first argue that the trial court erred in implicitly finding that Alberta, Debra, and Frank
 
 *1177
 
 were the owners of the land bounded on the east by the deed line and bounded on the west by the 1940 fence line because, they say, there was insufficient evidence that the use of that land by the owners of the east half was hostile.
 

 “In
 
 Lockhart v. Corcoran,
 
 494 So.2d 93 (Ala.Civ.App.1986), this court outlined the standard of review applicable in adverse-possession eases:
 

 “ ‘ “Whether the evidence establishes adverse possession is a question of fact, the determination of which, when made upon evidence presented ore tenus, is favored with a presumption of correctness and will not be disturbed on appeal unless plainly wrong or manifestly unjust.”
 
 Tidwell v. Strickler,
 
 457 So.2d 365, 368 (Ala.1984). The trial court’s judgment in such a case need only be supported by credible evidence.
 
 Jemison v. Belcher,
 
 368 So.2d 849 (Ala.1979).’
 

 “494 So.2d at 93.”
 

 Bohanon v. Edwards,
 
 970 So.2d 777, 781 (Ala.Civ.App.2007). Moreover,
 

 “[i]n ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of witnesses, and the trial court should accept only that testimony it considers to be worthy of belief.
 
 Ostrander v. Ostrander,
 
 517 So.2d 3 (Ala.Civ.App.1987). Further, in determining the weight to be accorded to the testimony of any witness, the trial court may consider the demeanor of the witness and the witness’s apparent candor or evasiveness.
 
 Ostrander,
 
 supra.... It is not the province of this court to override the trial court’s observations.
 
 Brown
 
 [
 
 v. Brown,
 
 586 So.2d 919 (Ala.Civ.App. 1991) ].”
 

 Woods v. Woods,
 
 653 So.2d 312, 314 (Ala.Civ.App.1994).
 

 “In
 
 Kerlin v. Tensaw Land & Timber Co.,
 
 390 So.2d 616 (Ala.1980), the supreme court recited Alabama law regarding adverse possession:
 

 “ ‘In Alabama there are basically two types of adverse possession, these two types being statutory adverse possession and adverse possession by prescription. Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years.
 
 See, Fitts v. Alexander,
 
 277 Ala. 372,170 So.2d 808 (1965). Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. Code 1975, § 6-5-200.
 
 See, Long v. Ladd,
 
 273 Ala. 410, 142 So.2d 660 (1962).
 

 “ ‘Boundary disputes are subject to a unique set of requirements that is a hybrid of the elements of adverse possession by prescription and statutory adverse possession. In the past there has been some confusion in this area, but the basic requirements are ascertainable from the applicable case law. In a boundary dispute, the coterminous landowners may alter the boundary line between their tracts of land by agreement plus possession for ten years, or by adverse possession for ten years.
 
 See, Reynolds v. Rutland,
 
 365 So.2d 656 (Ala.1978);
 
 Carpenter v. Huffman,
 
 294 Ala. 189, 314 So.2d 65 (1975);
 
 Smith v. Brown,
 
 282 Ala. 528, 213 So.2d 374 (1968);
 
 Lay v. Phillips,
 
 276 Ala. 273, 161 So.2d 477 (1964);
 
 Duke v. Wimberly,
 
 245 Ala. 639, 18 So.2d 554 (1944);
 
 Smith v. Bachus,
 
 201 Ala. 534, 78 So. 888 (1918).
 
 But
 
 
 *1178
 

 see, Davis v. Grant,
 
 173 Ala. 4, 55 So. 210 (1911).
 
 See also
 
 Code 1975, § 6-5-200(c). The rules governing this type of dispute are, in actuality, a form of statutory adverse possession.
 
 See
 
 Code 1975, § 6-5-200(c);
 
 Berry v. Guyton,
 
 288 Ala. 475, 262 So.2d 593 (1972).’
 

 “390 So.2d at 618-19.
 

 “Although the Alabama Supreme Court has applied the hybrid form of adverse possession described above in true boundary-line disputes,
 
 see, e.g., Johnson v. Brewington,
 
 435 So.2d 64, 65 (Ala.1983), it has held that, when a coterminous landowner is claiming to have acquired
 
 all or a significant portion
 
 of another coterminous landowner’s land by virtue of adverse possession, (1) the case is an adverse-possession case rather than a boundary-line dispute, (2) the hybrid form of adverse possession does not apply, and (3), therefore, the party claiming adverse possession must prove the elements of either statutory adverse possession or prescriptive adverse possession.
 
 See McCallister v. Jones,
 
 432 So.2d 489, 492 (Ala.1983) (holding that, when one coterminous landowner claimed to have acquired ownership of a three- to five-acre portion of the other coterminous landowner’s land, the case was an adverse-possession case to which the hybrid form of adverse possession applicable in boundary-line disputes did not apply); and
 
 Kerlin,
 
 390 So.2d at 619 (holding that, when one conterminous landowner claimed to have acquired ownership of the entire lot of the other coterminous landowner, the case was an adverse-possession case to which the hybrid form of adverse possession applicable in boundary-line disputes did not apply).”
 

 Buckner v. Hosch,
 
 987 So.2d 1149, 1151-53 (Ala.Civ.App.2007) (emphasis added).
 

 In the case now before us, the west half contained approximately 20 acres, while the gore of land that Alberta, Debra, and Frank claimed to own by virtue of adverse possession, which had dimensions of 1,327.67 feet by approximately 17 feet, contained approximately 22,570.39 square feet, which equals approximately one-half of an acre. Because the approximately 1/2-acre gore does not constitute all or a significant portion of the 20-acre west half, the case now before us is a true boundary-line dispute to which the hybrid form of adverse possession applies.
 
 See Buckner v. Hosch.
 

 Although the evidence at trial was in conflict, the trial court had before it evidence indicating that, from 1945 until at least 1970, the owners of both the west half and the east half maintained the fence that Bluett Tanner had erected in 1940; that, from 1945 until approximately 1992 or 1993, the owners of the west half confined their use of the west half to the portion of it that was west of the 1940 fence line and the owners of the east half used the portion of the west half that was located east of the 1940 fence line; that, during this period, the owner of the west half used the portion of the west half located west of the 1940 fence line for farming as well as grazing cattle; that, during this period, the owners of the east half used the portion of the west half located east of the 1940 fence line for farming as well as grazing cattle; and that, during this period, the owners of the west half and the owners of the east half treated the 1940 fence line as though it were the boundary line between the west half and the east half. The trial court could reasonably have found from this evidence that beginning in 1945, at the latest, the owners of the west half and the owners of the east half agreed that the 1940 fence line was the boundary line between the west half and the east half and that, for a
 
 *1179
 
 period in excess of 10 years thereafter, the owners of the east half exercised possession of the portion of the west half located east of the 1940 fence line. Thus, the trial court’s implicit finding that Alberta, Debra, and Frank were the owners, by virtue of adverse possession, of the portion of the west half located east of the 1940 fence line is supported by credible evidence and, therefore, is due to be affirmed.
 

 The Holifields next argue that the trial court erred in implicitly finding that the owners of the east half had adversely possessed the portion of the west half located east of the 1940 fence line because, they say, the great weight of the evidence indicated that the owners of the east half did not maintain the fence that had been erected in 1940 (“the 1940 fence”). However, when we review a trial court’s finding based on evidence the trial court received ore tenus, we do not reweigh the evidence.
 
 Mollohan v. Jelley,
 
 925 So.2d 207, 210 (Ala.Civ.App.2005) (“ ‘Where a trial court receives ore tenus evidence, .... [t]his court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court.’ ” (quoting
 
 Amaro v. Amaro,
 
 843 So.2d 787, 790-91 (Ala.Civ.App.2002))). If the trial court’s finding regarding an adverse-possession issue or a boundary-line issue is based on evidence it received ore tenus, we must affirm that finding if it is supported by credible evidence.
 
 See Bohanon v. Edwards,
 
 supra; and
 
 Carr v. Rozelle,
 
 521 So.2d 26, 28 (Ala.1988) (“ ‘A judgment of the trial court establishing a boundary line between coterminous landowners need not be supported by a great preponderance of the evidence; the judgment should be affirmed if, under any reasonable aspect of the case, the decree is supported by credible evidence.’
 
 Graham v. McKinney,
 
 445 So.2d 892, 894 (Ala.1984).”). Accordingly, because credible evidence supports the trial court’s implicit finding that, by virtue of adverse possession, Alberta, Debra, and Frank were the owners of the portion of the west half located east of the 1940 fence line, that finding is due to be affirmed.
 

 The Holifields also argue that the trial court erred in implicitly finding that the owners of the east half had adversely possessed the portion of the west half located east of the 1940 fence line because, the Holifields say, the great weight of the evidence indicated that the 1940 fence was merely a cattle fence that was not intended to mark the boundary between the west half and the east half. However, because credible evidence indicated that, for a period in excess of 10 years, both the owners of the west half and the owners of the east half treated the 1940 fence as a boundary-line fence rather than merely a cattle fence and that, for a period in excess of 10 years, the owners of the east half possessed the portion of the west half located east of the 1940 fence line, we must affirm the trial court’s implicit finding that the owners of the east half had adversely possessed the portion of the west half located east of the 1940 fence line.
 
 See Buckner v. Hosch; Bohanon v. Edwards; Mollohan v. Jelley;
 
 and
 
 Carr v. Rozelle.
 

 The Holifields also argue that we should reverse the judgment of the trial court because, they say, Frank spoli-ated evidence. The evidence at trial indicated that, in March 2007, while Frank was using a fire to clear a field, the fire spread to the bushes around a portion of the 1940 fence and destroyed it and that Frank subsequently removed the debris remaining after the fire with a “trackhoe.” However, Frank testified that he did not intentionally allow the fire to spread to the 1940 fence; the fire got out of his control. Although the Holifields argue that the destruction of this portion of the 1940 fence
 
 *1180
 
 prejudiced them because it prevented them from proving the location of this part of the 1940 fence, Bill Lavender, a witness with no interest in the outcome of the case, testified that the original location of the 1940 fence could still be determined from the remaining evidence despite Frank’s destruction of a portion of the 1940 fence.
 

 “Spoliation is an attempt by a party to suppress or destroy material evidence favorable to the party’s adversary.
 
 May v. Moore,
 
 424 So.2d 596, 603 (Ala.1982). Proof of spoliation will support an inference of guilt or negligence.
 
 May,
 
 424 So.2d at 603. One can prove spoliation by showing that a party
 
 purposefully or wrongfully destroyed
 
 a document that the party knew supported the interest of the party’s opponent. Id.”
 

 Wal-Mart Stores, Inc. v. Goodman, 789
 
 So.2d 166, 176 (Ala.2000) (emphasis added). In
 
 Wal-Mart Stores, Inc.,
 
 the supreme court rejected the defendant’s argument that it was entitled to a new trial on the ground that the plaintiff had spoliated evidence because there was no evidence indicating that the plaintiff knew that the destroyed evidence would be a key piece of evidence or that the plaintiff had intentionally destroyed the evidence to inhibit the defendant’s presentation of its case.
 

 In the case now before us, the trial court could reasonably have found from the evidence before it that Frank’s destruction of a portion of the 1940 fence was accidental rather than intentional and that the Holi-fields had not been prejudiced by the destruction of that portion of the 1940 fence because its location could be determined from the remaining evidence. Accordingly, we cannot hold that the trial court exceeded its discretion in declining to sanction Frank for his destruction of a portion of the 1940 fence.
 

 Finally, the Holifields argue that the description of the location of the boundary line as determined by the 1940 fence line in the trial court’s judgment is erroneous. As noted above, that description is patently erroneous because it locates the boundary line as determined by the 1940 fence line to the west of the west half. Therefore, we reverse the trial court’s judgment insofar as it purports to describe the location of the boundary line as determined by the location of the 1940 fence line, and we remand the case for the trial court to correct this error. In all other respects, we affirm the judgment of the trial court.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
 

 THOMAS, J., concurs in the result, without writing.