THOMAS, Judge.
Lynn Barter and his wife, Joy Barter, own Lots 38 and 39 in Lakeview Estates, a subdivision located in Randolph County; the Barters purchased their lots from Ma-wal, Inc., one of the 60 named defendants in this case.[1] The Barters’ deed to Lot 39, which is dated July 1999, is contained in the record on appeal. That deed includes the following exception (“the exception”) from the grant of Lot 39: “Except all rights and title to the dirt drive roadway and boat ramp located on the East side of said lot as shown on the plat recorded in Plat Book 2 Page 70 and Page 89 in the office of the Probate Judge of Randolph County, Alabama.” In April 1999, before the Barters purchased Lot 39, Burlin Meadows and Gwen Meadows executed a quitclaim deed to “all lot owners of Lake-view Estates”; the deed recited that it “remise[d], release[d], quitclaim[ed], and convey[ed] to the lot owners,” which it described as “the owners of lots one thru fifty-four,” “all right, title, interest, and claim in and to” the roadway and the boat ramp shown in the subdivision plat to be located on Lot 39.[2]
*154 In June 2009, the Barters filed an action in the Randolph Circuit Court seeking an abatement of the nuisance they alleged was caused by the use of the boat ramp and seeking a declaration of the legal effect of the April 1999 quitclaim deed of the roadway and the boat ramp to “the owners of Lakeview Estates.” The Barters named as defendants the Lakeview Estates Homeowners Association and all the record owners of Lakeview Estates as of April 1999 (“the subdivision lot owners”), including the Burton Garland Revocable Trust, Mawal, Inc., and Dennis Connell. After service on some, but not all, of the defendants was perfected, only a few of the defendants answered, all but one of them appearing pro se by letter to the trial court. The only defendant to appear through an attorney, Dennis Connell, answered and filed a counterclaim, in which he sought a determination that he had an express easement over the roadway and the boat ramp, a determination that the Barters had interfered with that easement, and an injunction requiring the Barters to remove the gate across the roadway and to permit unfettered access to the boat ramp.
Connell filed a motion for a summary judgment in February 2011. The Barters opposed that motion. Based on the facts in the parties’ pleadings and various submissions, it appears that the Barters alleged that they had improved the boat ramp by .paving the area surrounding the boat ramp and had, at times, cleared the area. The Barters alleged that their house had been burglarized twice and that people, including people who were not owners of lots in Lakeview Estates, were gathering and drinking at the boat ramp, which the Barters alleged created a nuisance. Based on recommendations from the sheriffs department, the Barters stated, they had placed a, gate across the roadway to restrict access to the boat ramp. According to the Barters, they would give a key to the gate to whomever requested one. The Barters characterized the interest in the roadway and the boat ramp granted to the subdivision lot owners as an easement.
In his summary-judgment motion, Con-nell argued that, based on the April 1999 quitclaim deed and the exception in the July 1999 deed to the Barters, Connell, and the other subdivision lot owners, and not the Barters, had title to the roadway and the boat ramp. He further argued that the Barters had “improperly caused impediment to Connell’s use and enjoyment of his jointly owned land.” Connell noted in his motion that the Barters were on notice of the subdivision lot owner’s common ownership of the roadway and the boat ramp at the time they purchased Lot 39. Connell also stated that the Barters had not “sufficiently plead[ed] or proved a prima facie case for nuisance.” Connell’s motion did not contain a narrative summary of facts, but he supported his motion with a copy of the April 1999 quitclaim deed, a 1998 deed conveying his lot to him, and the July 1999 deed conveying Lot 39 to the Barters, as well as with his own affidavit.
The Barters, in their response to Con-nell’s motion, argued that only nine of the subdivision lot owners had objected to the Barters’ claim of ownership of the roadway and the boat ramp or to ‘the Barters’ requests to have the use of the roadway and the boat ramp ended or at least restricted. The Barters offered Lynn Barter’s affidavit, in which he explained the facts giving rise to the litigation, including descriptions *155 of some of the behavior occurring at the boat ramp. In the statement of facts contained in their first brief in opposition to Connell’s summary-judgment motion, the Barters stated that the Meadowses had recorded the plat to create the Lakeview Estates subdivision, that the plat reflected a dirt roadway , and the boat ramp that ran across Lot 39, and that the Meadowses had executed a quitclaim deed in April 1999 conveying the roadway and the boat ramp to the subdivision lot owners. The first brief the Barters offered in opposition to Connell’s summary-judgment motion focused solely on the legal right of a servient estate holder to burden an easement insofar as the burden on the easement is not unreasonable. However, the Barters’ first brief did not address Connell’s claim that the 1999 quitclaim deed conveyed the roadway and the boat ramp to the subdivision lot owners in fee simple. After a hearing on the summary-judgment motion, the trial court directed the parties to brief the issue of the parties’ interests in the roadway and the boat ramp.
Thus, in June 2011, the Barters filed a supplemental brief in support of their opposition to Connell’s motion, in which they argued that the April 1999 quitclaim deed, which they characterized as a deed from the original developers of the Lakeview Estates subdivision, was void because of the ambiguous description of the grantees in that deed. The Barters also briefly argued that the deed had not been delivered. Connell responded with his own brief, which contained a statement of facts and a brief legal argument that the grantees of the deed were sufficiently named because they were capable of being ascertained. The Barters filed an objection to Connell’s brief, in which they requested that the trial court not consider Connell’s brief because it was filed after the deadline the court had set; the trial court did not rule on that motion. After a hearing, the trial court entered a summary judgment in favor of Connell and the other defendants.[3]
The Barters filed a postjudgment motion, in which they advanced several arguments that they had not made before the entry of the summary judgment. First, the Barters moved to strike Connell’s affidavit based on, among other things, the ground that the affidavit contained hearsay evidence. They further argued that Connell’s motion for a summary judgment had been procedurally deficient because it lacked a narrative summary of facts. The Barters also argued to the trial court that Connell did not establish that the Mead-owses had had good title to the roadway and the boat ramp such that the April 1999 quitclaim deed could convey fee-simple title to the subdivision lot owners, although they had never disputed the fact that the Meadowses could have conveyed an easement and had stated at a hearing on the summary-judgment motion that the Mead-owses had conveyed the roadway and the boat ramp to the subdivision lot owners to avoid liability that might arise from the *156 use of the boat ramp, indicating that the Barters conceded that the Meadowses had had title to the roadway and the boat ramp to convey. The Barters further argued that the April 1999 quitclaim deed should be construed not as a grant of fee-simple title to the roadway and the boat ramp but, instead, as the grant of an easement. Finally, the Barters argued that they, as tenants in common with the other lot owners, had the right to install the gate across the roadway because the Barters’ actions in installing the gate did not amount to an ouster of the other cotenants. The trial court did not rule on the Barters’ motion, and it was denied by operation of law. See Rule 59.1, Ala. R. Civ. P. The Barters then timely appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
On appeal, the Barters advance some of the arguments that they presented for the first time in their postjudgment motion. Although a trial court may consider an argument made for the first time in a postjudgment motion, a trial court is not required to do so. See Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369 (Ala.1988). In the present case, the trial court permitted the postjudgment motion to be denied by operation of law, which indicates that the trial court did not consider the Barters’ tardy arguments. See, generally, Espinoza v. Rudolph, 46 So.3d 403, 416 (Ala.2010) (indicating that an appellate court will not presume that a trial court considered the merits of an untimely asserted legal argument absent an indication that it did so). Thus, to the extent that the Barters rely on appeal on those arguments asserted for the first time in their postjudgment motion, we cannot consider those arguments as a basis for reversing the summary judgment in favor of Connell and the other defendants. Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000) (recognizing that “the appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment”). We will therefore not address the issues relating to the title possessed by the grantors of the April 1999 quitclaim deed[4] or the alleged procedural deficiencies in Connell’s summary-judgment motion. See Minor Heights Fire Dist. v. Skinner, 831 So.2d 609, 615 (Ala.Civ.App.2002) (refusing to consider whether the trial court erred in entering a summary judgment when the movant had failed to include a narrative summary of facts because the nonmovant had -not objected to the failure to include the summary in the trial court).
*157 The Barters argue on appeal that the trial court, should not have entered a summary judgment in favor of Connell and the other defendants because Connell’s motion was deficient and, thus, failed to shift the burden to the Barters to provide substantial evidence to rebut the motion. As noted above, the Barters failed to object to the lack of a narrative summary of facts before the entry of the judgment in favor of Connell and the other defendants, and, thus, we will not consider the Barters’ argument insofar as it is based on the lack of a narrative summary of facts. However, the Barters also argue that Connell’s summary-judgment motion sought a summary judgment in his favor on his counterclaims, upon which h¿ would have had the burden of proof at trial; thus, they contend, Connell was required to satisfy a different burden as movant than is a mov-ant who does not have the burden of proof on the issue at trial. Furthermore, the Barters argue that Connell failed to meet that burden.
“ ‘ “ ‘[T]he manner in which the [summary-judgment] movant’s burden of production is met depends upon which party has the burden of proof ... at trial.’ ” Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala.1999) (quoting Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989) (Houston, J., concurring specially)). If ... “ ‘the movant has the burden of proof at trial, the movant must support his motion with credible evidence, using any of the material specified in Rule 56(c), [Ala.] R. Civ. P. (“pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits”).’ ” 769 So.2d at 909. “ ‘The movant’s proof must be such that he would be entitled to a directed verdict [now referred to as a judgment as a matter of law, see Rule 50, Ala. R. Civ. P.] if this evidence was not controverted at trial’ ” Id. In other words, “when the movant has the burden [of proof at trial], its own submissions in support of the motion must entitle it to judgment as a matter of law.” Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 618 (2d Cir.1998) (emphasis added). See also Equal Employment Opportunity Comm’n v. Union Indepen-diente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49 (1st Cir.2002); Rushing v. Kansas City Southern Ry., 185 F.3d 496 (5th Cir.1999); Fontenot v. Upjohn Co., 780 F.2d 1190 (5th Cir.1986); Calderone v. United States, 799 F.2d 254 (6th Cir.1986).’
“Denmark v. Mercantile Stores Co., 844 So.2d-1189, 1195 (Ala.2002).”
Jones-Lowe Co. v. Southern Land & Exploration Co., 18 So.3d 362, 367 (Ala.2009). We note, however, that “all evidence of record, as well as that evidence formally submitted in support of or in opposition to a motion for summary judgment, should be considered in ruling on the motion.” Fountain v. Phillips, 404 So.2d 614, 618 (Ala.1981).
We agree that Connell would have had the burden of proof at. trial on his claim that the April 1999 quitclaim deed conveyed fee-simple title to the roadway and the boat ramp to him and the other subdivision lot owners and his request for an injunction requiring the Barters to remove the gate across the roadway. Thus, we agree that he was required to present evidence in support of his motion sufficient to entitle him to a judgment as a matter of law. However, we are not convinced that Connell failed to meet his burden with respect to his claim of fee-simple title to the roadway and the boat ramp under the April 1999 quitclaim deed or his claim *158 requesting an injunction requiring the removal of the gate.

The Effect of the April 1999 Quitclaim Deed

In their complaint, the Barters requested that the trial court determine the effect of the April 1999 quitclaim deed. Connell, in his counterclaim, requested that the trial court determine that he had an express easement in the roadway and the boat ramp. In his summary-judgment motion, Connell changed his argument, specifically arguing that the April 1999 quitclaim deed and the exception in the Barters’ July 1999 deed to Lot 39. demonstrated that he and the other subdivision lot owners had fee-simple title to the roadway and the boat ramp. The parties proceeded to brief the question regarding the validity of the April 1999 quitclaim deed, and the trial court, based on the arguments asserted by the parties, proceeded to determine whether, as a matter of law, Connell had proven that he (and the other subdivision lot owners) owned the roadway and the boat ramp.
The interpretation of a deed is sometimes a mixed question of law and fact. Lindsey Lumber & Export Co. v. Deas, 230 Ala. 447, 449, 161 So. 473, 474 (1935) (opinion on rehearing) (recognizing that “in some instances the interpretation may depend upon the sense in which the words are used, and upon facts aliunde”). However, “[i]n a suit to construe an unambiguous instrument, actual knowledge of the parties, oral statements of the parties, and other matters are inadmissible.” Cole v. Minor, 518 So.2d 61, 64 (Ala.1987). Therefore, we must determine whether additional evidence was necessary to determine the effect of the April 1999 quitclaim deed.
The Barters asserted below and now argue on appeal that the April 1999 quitclaim deed could be construed as only the grant of an easement as opposed to a grant of fee-simple title.[5] Relying on Looney v. Blackwood, 224 Ala. 342, 140 So. 400 (1932), the Barters argue that Alabama law provides that a conveyance of a “road way” is actually the conveyance of an easement or right-of-way over the roadway. However, Looney is inapposite, because the conveyance in Looney was for certain property and “the grant of a roadway” for ingress and egress over the grantor’s adjoining property to prevent the grantee from being landlocked. Looney, 224 Ala. at 343, 140 So. at 401. The April 1999 quitclaim deed, which indicated that it conveyed all right, title, and interest in the real estate more particularly described as the roadway and the boat ramp, did not indicate that the deed was intended to create merely an easement for ingress and egress over the lands of another.
Under Ala.Code 1975, § 35-4-2, the April 1999 quitclaim deed is presumed to have conveyed fee-simple title to the roadway and the boat ramp. See Moss v. Williams, 822 So.2d 392, 396-97 (Ala.2001) (construing similarly worded deeds and explaining the presumption stated in Ala. Code 1975, § 35-4-2, that “[ejvery estate in lands is to be taken as a fee simple ... unless it clearly appears that a less estate was intended”).
*159 “ ‘[T]he granting clause in a deed determines the interest conveyed, and unless there is repugnancy, obscurity or ambiguity in that clause, it prevails over introductory statements or recitals in conflict therewith, and over the habendum, too, if that clause is contradictory or repugnant to it.’ Slaten v. Loyd, 282 Ala. 485, 487-88, 218 So.2d 219, 220-21 (1968) (emphasis added). Where the granting clause, however, designates no particular estate, any intent to overcome the statutory presumption that the conveyance is of a fee-simple estate ‘must of necessity be found in lucid, unambiguous language used to express it, rather than statements merely contradictory or r&pugnant to that found in [the] granting clause.’ Slaten, 282 Ala. at 488, 213 So.2d at 221 (emphasis added).”
Moss, 822 So.2d at 397. In certain cases, the Alabama Supreme Court has determined that a conveyance of a roadway or of land intended for use as a roadway was, in fact, the conveyance of only a right-of-way. See, e.g., Greaves v. McGee, 492 So.2d 307 (Ala.1986). However, the determination of the interest conveyed hinges on the language used in the deed. Moss, 822 So.2d at 397.
In Moss, our supreme court construed the language in the granting clauses of two deeds, one in which the grantor used the clause “‘does hereby remise, release and forever quit claim ... the strip of land’ ” and the other in which the grantor used the clause, “ ‘does hereby grant, bargain, sell and convey ... all the following described property.’ ” Id. at 397 (emphasis omitted). Further, the habendum clauses in both deeds stated: “ ‘To Have and To Hold the same unto the [grantees,] its successors and assigns forever.’ ” Id. (emphasis omitted). In other parts of the deeds, however, the grantors used the term “ ‘right of way.’ ” Id.
Based on the language used in the deeds at issue in Moss, our supreme court determined that the deeds conveyed fee-simple title to the property at issue. Id. at 400. The court relied heavily on Rowell v. Gulf, Mobile Ohio R.R., 248 Ala. 463, 28 So.2d 209 (1946), and focused on the fact that the deeds conveyed land as opposed to a right to use the land. Id. at 398. Because the granting clauses in both deeds unambiguously conveyed “land” and “property,” respectively, the court concluded that they did not convey an incorporeal right but, instead, conveyed a fee-simple estate in the described property. Id. at 399.
The April 1999 quitclaim deed “remise[s], quitclaim[s], and convey[s] ... all right, title, interest and claim in and to the following described real estate.... ” Thus, based on Moss, it would appear that the granting clause in the April 1999 quitclaim deed indicates that a fee-simple conveyance was intended. Unlike the deeds in Moss, the April 1999 quitclaim deed contains no reference that could possibly be construed to limit the conveyance to an easement or a right-of-way. The only possibly limiting word contained in the April 1999 deed is the term “roadway,” which is contained in the description of the real estate conveyed. Therefore, the trial court had before it the only evidence necessary to determine the effect of the April 1999 quitclaim deed — the deed itself — and we cannot agree that the evidence presented to the trial court was insufficient to determine that the April 1999 quitclaim deed, if valid, conveyed fee-simple title in the roadway and the boat ramp to Connell and the other subdivision lot owners.
As they did below, the Barters further argue that the description of the grantees of the deed was so ambiguous as to render the deed void. The Barters rely upon Haney’s Chapel United Methodist Church v. United Methodist Church, 716 *160 So.2d 1156 (Ala.1998), as support for their contention that the description of the grantees in the April 1999 quitclaim deed was too ambiguous for the deed to be considered valid. Certainly, as our supreme court has explained, “for a deed to serve as a successful conveyance, the grantee must be identifiable with certainty.” Haney’s Chapel, 716 So.2d at 1159. The deed in Haney’s Chapel named as grantee “ ‘This Community.’ ” Id. According to the court, no evidence explaining the intent of the grantors was admitted and the exact meaning of the designation “ ‘This Community’ ” was unknown, rendering the deed void. Id.
The April 1999 quitclaim deed, in contrast, makes clear the identity of the grantees by describing them as “all lot owners of Lakeview Estates” and further describing them as “being the owners of lots numbered one thru fifty-four.” The identity of the grantees was thus readily ascertainable. See, e.g., Roeckl v. F.D.I.C., 885 P.2d 1067, 1071 (Alaska 1994) (quoting 6 George W. Thompson, Commentaries on the Modem Law of Real Property § 3006, at 349 (John S. Grimes repl. ed.1962)) (noting that “the grantee need only be ‘so designated and described as to distinguish him [or her] from the rest of the world’ ”); Garraway v. Yonce, 549 So.2d-1341, 1342 (Miss.1989) (stating that the law requires only that “the grantee be described in such terms that by reference to objective evidence otherwise available, his identity may be ascertained with reasonable certainty”); Close v. O’Brien & Co., 135 Iowa 305, 307, 112 N.W. 800, 801 (1907) (“It is a well-recognized rule that the grantee in a deed may, under certain conditions, be identified by extrinsic evidence, and, where the grantee may be identified by parol or by other evidence, a conveyance will vest the legal title as completely and as surely as if he were fully identified by the conveyance itself.”); see also 4 Herbert Thorndike Tiffany, The Law of Real Property § 967 (3d ed. 1975) (“The grantee or grantees must be named in the conveyance, or means for their identification furnished thereby.”). Thus, we are not convinced that the April 1999 quitclaim deed was void because it did not specifically name the grantees.
To the extent the Barters have argued sufficiently on appeal and in the trial court that the April 1999 quitclaim deed was invalid because it was not delivered, we must disagree.[6] As the Barters admit, “the recording of a deed by a grant- *161 or can often constitute sufficient delivery of the instrument to convey title, if that is the intention of the grantor.” Tierce v. Macedonia United Methodist Church of Northport, 519 So.2d 451, 459 (Ala.1987). Furthermore, “[i]f [a deed] is duly acknowledged and recorded, the presumption of delivery attaches, which can be repelled only by evidence of the dissent of the grantee.” Gulf Red Cedar Co. v. Cranshaw, 169 Ala. 606, 613, 53 So. 812, 814 (1910) (“It may be regarded as settled in this state that when a paper purporting to be a deed is shown to have been signed by the grantor, to have been then acknowledged and duly certified by a proper officer, and recorded in the office of the judge of probate of the county in which the lands lie, and there is no other proof to weaken the force of these facts, this is sufficient proof of complete execution by delivery, although there is no direct proof of delivery.”). The April 1999 quitclaim deed was recorded, and, although some of the defendants failed to answer the Barters’ complaint and some filed answers disclaiming any interest in the roadway and the boat ramp, we cannot agree, and the Barters cite no authority for the proposition, that such actions by some of the defendants amount to proof that the subdivision lot owners dissented from the delivery of the deed.
Thus, we cannot agree with the Barters that Connell did not meet his burden of presenting evidence that would entitle him to a judgment as a matter of law on the issue whether the April 1999 quitclaim deed conveyed fee-simple title in the roadway and the boat ramp to him and the other subdivision lot owners. The April 1999 quitclaim deed conveyed the roadway and the boat ramp in fee simple and did not merely grant Connell and the other subdivision lot owners an easement. Further, the deed is not void because the grantees were ascertainable and, thus, sufficiently named and because the presumption that the deed was delivered was not effectively rebutted. We therefore affirm the summary judgment insofar as it determined that the April 1999 quitclaim deed conveyed fee-simple title in the roadway and the boat ramp to Connell and the other subdivision lot owners.

The Injunction Requiring Removal of the Gate

Regarding the summary judgment on Connell’s claim seeking an injunction requiring the Barters to remove the gate across the roadway and to permit unfettered access to the boat ramp, we reach the same conclusion. Connell, as the party having the burden of proof at trial, was required to present evidence that would entitle him to an injunction requiring removal of the gate as a matter of law. See Jones-Lowe Co., 18 So.3d at 367. The trial court had before it the April 1999 quitclaim deed and the Barters’ July 1999 deed to Lot 39, which specifically excepts the roadway and the boat ramp from the conveyance of Lot 39.
The trial court determined that the April 1999 quitclaim deed conveyed fee-simple title to the “original grantees.” Thus, it appears that the trial court determined that the “original grantees” — namely, Connell and the other subdivision lot owners — owned indivisible interests in the roadway and the boat ramp as tenants in common. Based on the fact that the Barters did not own Lot 39 at the time the April 1999 quitclaim deed was executed, and based on the exception in the July 1999 deed, the trial court necessarily, and correctly, concluded that the Barters did not hold any title to the roadway and the boat ramp. The Barters concede as much, stating in their brief on appeal that, if the April 1999 quitclaim deed is construed as a conveyance of the roadway and the boat *162 ramp in fee simple, title to the roadway and the boat ramp would not pass with the transfer of title to a lot in the subdivision because the title to the roadway and the boat ramp would be “title to land additional to that described [in the deed to a lot in the subdivision and] cannot pass as ■ an appurtenance.” 23 Am.Jur.2d Deeds § 55 (2002). The Barters have not presented any evidence indicating that their predecessor in title conveyed to them any interest in the roadway and the boat ramp.
Although the Barters provide authority for the legal principle that a servient estate may place a gate across an easement, see Hammond v. Lovvorn, 16 So.3d 813 (Ala.Civ.App.2009), that principle does not assist the Barters. The trial court determined that the April 1999 quitclaim deed conveyed fee-simple title to the roadway and the boat ramp, and we have affirmed that legal conclusion; thus, the right of the servient-estate holder to place a gate across an easemént provided that the easement is not unduly burdened has no application. Therefore, the evidence before the trial court established that Connell and the other subdivision lot owners own the roadway and the boat ramp and that the Barters have no right to erect a gate across the roadway.[7]
Because the evidence presented at trial established that the April 1999 quitclaim deed conveyed fee-simple title in the roadway and the boat ramp to Connell and the other subdivision lot owners, the summary judgment declaring that Connell and the other defendants own the roadway and the boat ramp is affirmed. Furthermore, because the trial court determined that the April 1999 quitclaim deed conveyed fee-simple title to Connell and the other subdivision lot owners, who were the original grantees, it also necessarily determined that the Barters did not hold any interest in the roadway and the boat ramp. Accordingly, the trial court properly entered a summary judgment in favor of Connell on his counterclaim seeking an injunction requiring the Barters to remove the gate across the roadway. The summary judgment is therefore affirmed in its entirety.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. A total of 60 defendants were named, but it appears that defendant number 36 was later named as defendant number 60, so the action actually involved only 59 defendants.

. The record contains two deeds conveying the roadway and the boat ramp. The first deed describes the roadway and the boat ramp by use of those terms and by reference to the subdivision plat. The second deed *154 gives a legal description of the property by metes and bounds. No party contends that the deeds do not convey identical property.

. The trial court entered a summary judgment in favor of the defendants on all claims made in the Barters’ complaint. On appeal, the Barters raise arguments as to only those claims relating to the ownership of the roadway and the boat ramp and their right to place a gate across the roadway. They do not raise any arguments relating to the summary judgment insofar as it disposed of their nuisance claim. Thus, we affirm the summary judgment insofar as it disposed of the Barters' nuisance claim. Edosomwan ex rel. Edosomwan v. A.B.C. Daycare & Kindergarten, Inc., 32 So.3d 591, 593 (Ala.Civ.App.2009) (citing Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003)) (stating that issues not raised and argued in brief are waived and affirming a summary judgment insofar as it related to claims about which the appellant had failed to raise an argument on appeal).

. We note that the record contains a document that appears to reflect the chain of title to Lot 39, originating with the Meadowses and culminating in Mawal, Inc., the predecessor in title to the Barters. It appears that the document might have been submitted by the Barters, but the record is not clear on that point. In any event, no party moved to strike the document, and, although it is clearly hearsay evidence of the chain of title, it could have been considered by the trial court. See Chatham v. CSX Transp., Inc., 613 So.2d 341, 344 (Ala.1993) (stating that "[a] party must move the trial court to strike any nonadmissible evidence that violates Rule 56(e),” Ala. R. Civ. P., and that "[failure to do so waives any objection on appeal and allows [an appellate court] to consider the defective evidence”). Furthermore, at one of the hearings on the summary-judgment motion, the attorney for the Barters states that Burlin Meadows conveyed the roadway and the boat ramp "to keep h[im] and his wife from being liable if somebody got hurt down there,” indicating that the Barters conceded that the Meadowses owned the property before they conveyed it in the April 1999 quitclaim deed.

. In their briefs in opposition to Connell’s summary-judgment motion, the Barters mere- ■ ly asserted that Connell and the other subdivision lot owners held only an easement in the roadway and the boat ramp; the Barters first supported this assertion with legal argument and authority in their postjudgment motion. However, because the record reflects that the Barters did maintain, albeit with no legal support, that the April 1999 quitclaim deed conveyed only an easement, we will consider the more developed argument they make on appeal.

. The entire argument on this issue made to the trial court was as follows:
"One of those requirements is that the deed has to be delivered. The question here is how do you deliver a deed to 54 different unsuspecting grantees. The only argument to accomplish delivery would be that the deed was recorded. The next question is can you give somebody something that they don’t want to have. The Alabama Supreme Court stated in the case of Blackmon v. Quennelle, 189 Ala. 630, 66 So. 608 (Ala.1914) that 'A deed is but an executed contract of sale.’ It is basic law of contracts that to have a valid contract there has to be a meeting of the minds. There is no dispute in the case at bar that there was no meeting of the minds. The unsuspecting lot owners had no knowledge that the original developers, in an effort to avoid liability, were deeding the boat ramp to them and had not inquired if they ever wanted to be an owner of the boat ramp.”
The argument presented in the Barters’ brief on appeal consists of one paragraph in which they state the general rule that delivery of a deed is required; state, without citation to supporting authority, that the recording of a deed "in certain instances” can function as delivery; and then argue, in one sentence, without citation to supporting authority, that the failure of some of the defendants to answer and that the answers of some of the defendants indicating that they did not claim and interest in the roadway and the boat ramp should prevent the application of that rule in the present case.

. In their brief on appeal, the Barters also argue the legal principle that a cotenant in possession may safeguard his or her property with locks provided he does not oust his co-tenants. See Spiller v. Mackereth, 334 So.2d 859 (Ala.1976) (holding that a cotenant who complained that another cotenant in possession had placed locks on a building owned in common had not proven ouster because of a lack of evidence that the cotenant in possession intended to exclude his cotenants by use of the locks). As noted previously, this particular argument was not presented to the trial court until the Barters filed their post-judgment motion. Therefore, we need not consider this argument. However, even if we did consider this argument despite its tardy postjudgment assertion by the Barters, we would conclude that it lacks merit. The trial court’s determination that the "original grantees,” which would include the Barters' predecessors in title, hold fee-simple title to the roadway and the boat ramp necessarily determines that the Barters are not cotenants in the roadway and the boat ramp.