MOORE, Judge.
James L. Hubbard appeals from a judgment of the Talladega Circuit Court ("the trial court") concluding, among other things, that Hubbard is the owner of an easement in Talladega County and that James E. Cason ("James") is entitled to a joint easement for ingress and egress over the west 20 feet of that easement, pursuant to adverse possession. We affirm the trial court's judgment.
Procedural History
On April 23, 2014, Hubbard filed a complaint against James and Austin Cason ("Austin"), seeking a judgment declaring the respective rights and obligations of the parties with regard to a 40-foot-wide and 982-foot-long strip of property ("the roadway") located in Talladega County that has been used as a road to access property belonging to Hubbard and James, among others. Hubbard asserted that he owned the roadway by virtue of a deed or, alternatively, by adverse possession; he asserted a claim of trespass against James and Austin and sought a preliminary injunction prohibiting them from using the roadway. James and Austin filed answers to the complaint, denying the allegations asserted by Hubbard.
On November 10, 2014, Hubbard filed an amended complaint, adding as a defendant Branch Banking and Trust Company ("BB & T"), which, according to the amended complaint, held a mortgage on property belonging to James; BB & T was later dismissed as a defendant after presenting evidence indicating that the mortgage it held on James's property had been satisfied. On May 5, 2015, Hubbard filed a motion for a summary judgment, arguing that he owned the roadway in fee simple. On June 17, 2015, James and Austin filed a response to Hubbard's summary-judgment motion in which they argued, among other things, that Hubbard had merely been granted a right-of-way in the roadway. James and Austin argued that James owns the roadway, subject to Hubbard's easement, and they sought an order from the trial court limiting other entities from using the roadway. Hubbard filed a reply to the response. On June 22, 2015, the trial court entered an order denying Hubbard's summary-judgment motion.
On July 31, 2015, Hubbard filed a second amended complaint, adding as defendants *1129 Emitte P. Caldwell and William Lee Morrow ("William"). Hubbard asked the trial court, in the event it determined that he was not the sole owner of the roadway in fee simple, to order that the roadway be sold and the proceeds divided among him and the other joint owners of the roadway. On January 4, 2016, Hubbard filed an application, with a supporting affidavit, for an entry of default against Caldwell and William. The trial court entered an order noting that Caldwell and William were subject to having default judgments entered against them but it reserved entering any such judgments until the presentation of Hubbard's case at trial. Following the entry of that order, Caldwell filed with the trial court a document indicating that he "denie[d] th[at] order."
Following a trial on August 29, 2016, the trial court entered a final judgment on February 15, 2017, in which it, among other things, set aside the entry of default against Caldwell; entered a default judgment in favor of Hubbard against William; and concluded, among other things, that Hubbard has superior paper title with regard to an easement in the roadway to the exclusion of the paper title asserted by James and that William owns the property on which the roadway is situated. The trial court enjoined James and Austin from blocking, impeding, or obstructing the easement or any part or portion thereof from Hubbard's use as set out in the deed conveying the easement to Hubbard; it also granted an easement in favor of James on the west 20 feet of the roadway, based on a finding of adverse possession, subject to the rights of William. The trial court denied all remaining claims not specifically addressed in the judgment. Hubbard timely filed his notice of appeal to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6).[1]
Facts
Steve Upchurch, a real-estate attorney, testified that he had performed a title examination on the roadway and that the first deed he had examined was a May 20, 1970, deed from M.E. Caldwell and Ruth Allen Caldwell to Mary C. Morrow and her husband, Edison L. Morrow ("the Morrows"); according to Upchurch, that deed had transferred the roadway and the property surrounding the roadway to the Morrows.
On March 24, 1986, the Morrows executed a deed in favor of David W. Challender and Troy Ann Challender; that deed stated, in pertinent part:
"[The Morrows] ... grant, bargain, sell and convey unto ... David W. Challender and wife, Troy Ann Challender, ... the following described real estate situated in Talladega County, Alabama, to-wit:
"A RIGHT OF WAY AND EASEMENT for road construction, maintenance, ingress, egress, utility construction, public dedication and every other right necessary to ensure the enjoyment and use of the property described as: [a description of a strip of property approximately 40 feet wide and 982 feet long].... TO HAVE AND TO HOLD to [David W. Challender and Troy Ann Challender], his, her, their heirs and assigns forever."
According to Hubbard, on August 11, 1986, the Challenders conveyed to Hubbard 40 acres of property that lies north of the roadway, in addition to the roadway itself. He stated that he had been told that he was purchasing the roadway in fee simple, rather than merely an easement in the *1130 roadway. The deed from the Challenders to Hubbard recites the same language regarding the roadway that appeared in the deed from the Morrows to the Challenders.[2]
Caldwell testified that Mary C. Morrow was his mother and that Edison L. Morrow was his stepfather, that Edison had predeceased Mary, and that, upon Edison's death, the property in Edison's name had been transferred to Mary. On April 30, 1998, Mary transferred property to Caldwell that, according to Upchurch, was bounded on the east by the west boundary of the roadway. Upchurch testified that, on that same date, Mary had transferred to her other son, William, by deed, 26 acres of property, which included the roadway, and that, as a result of that deed, William owned the roadway in fee simple.
On June 22, 1998, Caldwell executed a deed in favor of James, which deed, according to Upchurch, purported to convey 20 feet of the roadway to James. Caldwell testified that, when he sold the property to James, there had been an old wagon road bed that went across the property and that it had been his understanding that he had sold half of the road bed to James and that the other half had belonged to his brother, but that the roadway had been a right-of-way for the Challenders to use.
Hubbard testified that he had sent a letter to James on December 1, 1998, because James had blocked the roadway with a travel trailer, a pile of rubbish, and other equipment that had kept him from accessing his property. He testified that David Challender had built up the roadway for traveling across it with vehicles and that Hubbard had finished building it up and had used it for over 30 years. Hubbard testified that he had known since December 1, 1998, when he had written the letter to James, that James and Austin had been using the roadway to access James's property. He testified that he thought James and Austin had done some upkeep on the roadway.
Austin testified that James is his brother and that he lives in a mobile home on the property owned by James. Austin testified that James had moved to the property in the 1990s and that he had moved onto the property in 2000. Austin stated that he had helped James build and repair the roadway that goes up to James's house. He stated that, since he had moved there in 2000, he had done repair work, including placing gravel, on the roadway. Austin testified that, at some point, James had been injured and confined to a wheelchair, but, he said, before that, James had also placed gravel on the roadway. According to Austin, he had also cut grass along the roadway and had kept up the roadway from the entrance of the roadway up to his mobile home. He stated that he had assisted in building a ramp from James's house onto the roadway, that log trucks had come in to build the ramp, and that those log trucks had blocked the roadway. Austin testified that he had had a pontoon boat parked on the side of the roadway after 2000 but that he had not placed anything across the roadway. He stated that he and James had parked vehicles on the side of the roadway but not across the roadway. Austin testified that there was a period in 2014 when the roadway had been blocked to keep loggers out.
Analysis
Hubbard argues on appeal that the trial court erred by concluding that James had proved ownership of an easement in the *1131 roadway by virtue of adverse possession, by denying his motion for a summary judgment, and by concluding that Hubbard does not own the roadway in fee simple, but has only an easement therein. We address the issues raised on appeal in a different order than presented by Hubbard in his brief on appeal.
To the extent that Hubbard argues that the trial court erred by denying his motion for a summary judgment, we note that "[t]his court does not review the denial of a summary judgment after a trial on the merits has been held." Franklin v. Woodmere at the Lake, 89 So.3d 144, 150 (Ala. Civ. App. 2011). Accordingly, we decline to further address Hubbard's argument on that point.
Hubbard next argues that the trial court erred by concluding that he owned an easement in the roadway, asserting instead that he owns the roadway in fee simple. Hubbard cites Slaten v. Loyd, 282 Ala. 485, 487-88, 213 So.2d 219, 220-21 (1968), for the proposition that "the granting clause in a deed determines the interest conveyed, and unless there is repugnancy, obscurity or ambiguity in that clause, it prevails over introductory statements or recitals in conflict therewith, and over the habendum, too, if that clause is contradictory or repugnant to it." Hubbard also cites Rowell v. Gulf, Mobile & Ohio Railroad, 248 Ala. 463, 28 So.2d 209 (1946), and Moss v. Williams, 822 So.2d 392, 398-99 (Ala. 2001), in support of his assertion that the language in the line of deeds transferring the roadway does not operate to limit the estate conveyed from title in fee simple to an easement. We disagree.
In Moss, our supreme court stated, in pertinent part:
" 'It is frequently stated that:
" ' "One of the rules in the construction of deeds is that if there be two clauses which are utterly inconsistent with each other, and which cannot be reconciled or made to stand together, the last shall give way to the first, the maxim being 'the first clause in a deed, and the last in a will, shall prevail.' " '
" Wilkins v. Ferguson, 294 Ala. 25, 29, 310 So.2d 879, 883 (1975) (Jones, J., concurring specially) (quoting Henry v. White, 257 Ala. 549, 60 So.2d 149 (1952) ) (emphasis added). More specifically, 'the granting clause in a deed determines the interest conveyed, and unless there is repugnancy, obscurity or ambiguity in that clause, it prevails over introductory statements or recitals in conflict therewith, and over the habendum, too, if that clause is contradictory or repugnant to it.' Slaten v. Loyd, 282 Ala. 485, 487-88, 213 So.2d 219, 220-21 (1968) (emphasis added). Where the granting clause, however, designates no particular estate, any intent to overcome the statutory presumption that the conveyance is of a fee-simple estate 'must of necessity be found in lucid, unambiguous language used to express it, rather than statements merely contradictory or repugnant to that found in [the] granting clause.' Slaten, 282 Ala. at 488, 213 So.2d at 221 (emphasis added)."
822 So.2d at 397.
In the present case, the clauses in the 1986 deed from the Morrows to the Challenders are not utterly inconsistent. Upchurch testified that the deed from the Morrows to the Challenders did not convey more than a right-of-way or easement and that, in his opinion, it was "the strongest easement [he] ha[d] ever seen." Thus, in accordance with Moss, it is unnecessary to consider the rules of construction as discussed therein, as urged by Hubbard on appeal.
In Holmes v. Compton, 273 Ala. 554, 555, 142 So.2d 697, 698 (1962), our supreme court considered a deed in which *1132 the granting clause, like in the present case, indicated that the owner did thereby " 'grant, bargain, sell and convey' " to the grantees, " 'their heirs and assigns, the following described real estate,' " which was followed by a description of property and a statement that " '[t]he grantor herein reserves to her self and her heirs one half of the oil and all minerals that may be discovered in said land.' " Our supreme court determined, in pertinent part:
"[T]he [lower] court held that where there is an inconsistency between the granting clause containing words of inheritance and statements in the habendum or clauses subsequent to the granting clause, the granting clause in the deed will prevail and the clause containing the reservation of mineral rights will be considered void.
"We do not take this view of the situation. Considering the entire deed we believe that a clear intention appears in the deed for the grantor to reserve certain mineral rights in the property. This is true although the granting clause contains words of inheritance. Accordingly there is no necessity to invoke any arbitrary rules of construction."
273 Ala. at 556, 142 So.2d at 698-99.
Although there are certain distinctions between the issue of mineral rights in Holmes and the creation of an easement in the present case, like in Holmes, a clear intention appears in the 1986 deed from the Morrows to the Challenders to convey an easement. As discussed in Moss, the granting clause in the present case, which appears on a preprinted form, refers to "real estate" but it does not specify the real estate to be conveyed. That description of what is to be conveyed appears below the preprinted language and specifies from the outset that what is to be conveyed is "A RIGHT OF WAY AND EASEMENT." The deed then clearly outlines the purposes therefor and conveys the rights necessary for use of the conveyed property as an easement. The language is clear and unambiguous that an easement was intended. Moreover, despite the use of the phrase "real estate" in the granting clause, there is nothing contradictory therein to indicate that more than an easement was intended to be conveyed. Accordingly, the Morrows conveyed to the Challenders an easement in the 1986 deed. "A landowner cannot convey a greater interest in property than he possesses." Chancy v. Chancy Lake Homeowners Ass'n, 55 So.3d 287, 297 (Ala. Civ. App. 2010). Thus, the Challenders could not have conveyed to Hubbard more than the easement they had been granted by the Morrows in the August 1986 deed. Accordingly, we affirm the trial court's judgment insofar as it concluded that Hubbard holds an easement in the roadway.
Hubbard also argues on appeal that James failed to prove that he has an easement in a portion of the roadway by virtue of adverse possession. Hubbard argues that James was not present at the trial and, thus, did not testify as to any acts of adverse possession. Hubbard fails, however, to cite any authority indicating that James's failure to personally appear at the trial precluded the trial court from finding that James had adversely possessed a portion of the roadway such that an easement was created in his favor.
" 'Rule 28(a)(10), Ala. R. App. P., requires that arguments in an appellant's brief contain "citations to the cases, statutes, other authorities, and parts of the record relied on." ' Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala. 2007). 'When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research.'
*1133 City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala. 1998)."
Salter v. Moseley, 101 So.3d 242, 247 (Ala. Civ. App. 2012). Accordingly, we decline to reverse the trial court's judgment on the basis of James's failure to appear at the trial.
Hubbard also notes that James and Austin failed to assert any affirmative defense or counterclaim of adverse possession at any time. Rule 15(b), Ala. R. Civ. P., provides, in pertinent part:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."
Our supreme court has observed that "implied consent of the parties can be inferred from an opposing party's failure to object to introduction of evidence raising the disputed issue initially." International Rehab. Assocs., Inc. v. Adams, 613 So.2d 1207, 1213 (Ala. 1992). At trial, James and Austin's attorney solicited evidence on the issue of adverse possession without objection by Hubbard. Accordingly, we conclude that the issue whether James had acquired an easement in a portion of the roadway by virtue of adverse possession was tried by the implied consent of the parties.
Hubbard finally argues that James failed to prove adverse possession of a portion of the roadway.
"[W]hen we review a trial court's finding based on evidence the trial court received ore tenus, we do not reweigh the evidence. Mollohan v. Jelley, 925 So.2d 207, 210 (Ala. Civ. App. 2005) (' "Where a trial court receives ore tenus evidence, .... [t]his court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court." ' (quoting Amaro v. Amaro, 843 So.2d 787, 790-91 (Ala. Civ. App. 2002) ) ). If the trial court's finding regarding an adverse-possession issue or a boundary-line issue is based on evidence it received ore tenus, we must affirm that finding if it is supported by credible evidence. See Bohanon v. Edwards, [970 So.2d 777 (Ala. Civ. App. 2007) ] ; and Carr v. Rozelle, 521 So.2d 26, 28 (Ala. 1988) (' "A judgment of the trial court establishing a boundary line between coterminous landowners need not be supported by a great preponderance of the evidence; the judgment should be affirmed if, under any reasonable aspect of the case, the decree is supported by credible evidence." Graham v. McKinney, 445 So.2d 892, 894 (Ala. 1984).')."
Holifield v. Smith, 17 So.3d 1173, 1179 (Ala. Civ. App. 2008).
With regard to its conclusion that James is entitled to an easement in a portion of the roadway by adverse possession, the trial court stated, in pertinent part:
"The evidence supports [James's] claim of adverse possession for a joint easement with [Hubbard], along and upon the west 20 feet of the subject easement. Based upon the testimony, [James] has color of title by virtue of his deed from Caldwell for the West 20 feet of the subject easement. Further, from the testimony, he has for a period exceeding 10 years used the subject easement, and no other for ingress and egress to his residence. [James] has been in the open, continuous, exclusive, adverse and notorious possession of the West 20 feet of the subject easement as to [Hubbard], thereby being entitled to Judgment in his favor for a joint easement *1134 with [Hubbard] over and upon the same."
In Jones v. Johnson, 827 So.2d 768, 771-72 (Ala. 2002), our supreme court observed:
"An easement by prescription is acquired by use of ' "the premises over which the easement is claimed for a period of twenty years or more, adversely to the owner of the premises, under claim of right, exclusive, continuous, and uninterrupted, with actual or presumptive knowledge of the owner." ' Blalock v. Conzelman, 751 So.2d 2, 4 (Ala. 1999) (quoting Bull v. Salsman, 435 So.2d 27, 29 (Ala. 1983) ).
"An easement by 'adverse use for the statutory period' requires satisfaction of the nontemporal elements of the prescriptive easement, plus one of the three additional requirements of Ala. Code 1975, § 6-5-200 :
" '(a) Adverse possession cannot confer or defeat title to land unless:
" '(1) The party setting it up shall show that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for 10 years before the commencement of the action;
" '(2) He and those through whom he claims shall have annually listed the land for taxation in the proper county for 10 years prior to the commencement of the action if the land is subject to taxation; or
" '(3) He derives title by descent cast or devise from a predecessor in the title who was in possession of the land.'
"(Emphasis added.) If the requirements of 'adverse use for the statutory period' are met, then a use will ripen into an easement by adverse possession in 10 years, instead of the 20 years required to establish a prescriptive easement. Downey v. North Alabama Mineral Dev. Co., 420 So.2d 68 (Ala. 1982)."
The trial court cited Apley v. Tagert, 584 So.2d 816, 819 (Ala. 1991), in which our supreme court observed
"that it is not necessary that the party seeking an easement be the only one who has used or who has been entitled to use the road, 'so long as he used it under a claim of right independently of others.... [T]he user of another's land for purposes of passage, if continued for the prescriptive period, may operate to create an easement of a right of way, although the owner of the land also passes upon the same line....' [Belcher v. Belcher,] 284 Ala. [254] at 257, 224 So.2d [613] at 615 [ (1969) ]. (Emphasis added.)"
It appears undisputed that the June 22, 1998, deed from Caldwell to James purported to convey 20 feet of the roadway to James and that James had used the roadway to access his property since that time. Hubbard argues on appeal that James's and Austin's use of the roadway was permissive, rather than adverse. We note, however, that there is no testimony indicating that Hubbard had given James or Austin permission to use the roadway at any time. Hubbard points to a letter that he sent James on December 1, 1998, in which he enclosed his deed to the roadway and indicated that James had placed certain items along the roadway, but he did not indicate in that letter that he had given James permission to use the roadway. In a letter from Hubbard to James and Austin, dated November 16, 2009, Hubbard suggested that he had permitted James and Austin to use the roadway. That being the first indication that the use had been permissive, and that letter having been sent more than 10 years after James had begun using the roadway, *1135 we conclude that the trial court was within its discretion to determine from the evidence presented that James was entitled to an easement in a portion of the roadway by virtue of adverse use for the statutory period.[3] Accordingly, we affirm the trial court's judgment.
AFFIRMED.
Thompson, P.J., and Pittman, J., concur.
Donaldson, J., concurs in part, concurs in the result in part, and dissents in part, with writing, which Thomas, J., joins.
DONALDSON, Judge, concurring in part, concurring in the result in part, and dissenting in part.
The trial court entered a judgment on February 15, 2017, finding, in part, that James L. Hubbard ("Hubbard") held an easement over a 40-foot-wide and 982-foot-long strip of property ("the roadway"). In that same judgment, the trial court held that James E. Cason ("Cason") had established the elements of a prescriptive easement in a portion of the roadway. The trial court held that William L. Morrow ("Morrow") held fee title to the roadway. In my view, Hubbard holds a fee interest in the roadway, not an easement.
The record shows that Edison L. Morrow and Mary C. Morrow held fee ownership of property that included the roadway. On March 24, 1986, Edison L. Morrow and Mary C. Morrow executed a deed to David W. Challender and Troy Ann Challender conveying an interest in the roadway. On August 11, 1986, the Challenders executed a deed to Hubbard.[4] Both deeds state, in relevant part:
"[The grantor(s) ] ... grant, bargain, sell and convey unto ... [the grantee(s) ] ... the following described real estate situated in Talladega County, Alabama, to-wit:
"A RIGHT OF WAY AND EASEMENT for road construction, maintenance, ingress, egress, utility construction, public dedication and every other right necessary to ensure the enjoyment and use of the property described as: [a description of a strip of property approximately 40 feet wide and 982 feet long].
"....
"TO HAVE AND TO HOLD to [the grantee(s) ], his, her, their heirs and assigns forever."
(Emphasis added.)
"The determination of whether a deed is ambiguous is a question of law, and, thus, it is an issue to be determined by the trial court." Bain v. Gray, 835 So.2d 1034, 1037-38 (Ala. Civ. App. 2002) (citing Phillips v. Harris, 643 So.2d 974 (Ala. 1994) ).
*1136 " ' "[O]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court's review is de novo." ' " Moss v. Williams, 822 So.2d 392, 394 (Ala. 2001) (quoting Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala. 1999), quoting in turn Ex parte Graham, 702 So.2d 1215, 1221 (Ala. 1997) ).
To determine whether a fee interest, or only an easement, in the roadway was conveyed by those deeds, I would start with § 35-4-2, Ala. Code 1975, which provides: "Every estate in lands is to be taken as a fee simple, although the words necessary to create an estate of inheritance are not used, unless it clearly appears that a less estate was intended."
" 'Where the granting clause ... designates no particular estate, any intent to overcome the statutory presumption that the conveyance is of a fee-simple estate "must of necessity be found in lucid, unambiguous language used to express it, rather than statements merely contradictory or repugnant to that found in [the] granting clause." Slaten [v. Loyd], 282 Ala. [485] at 488, 213 So.2d [219] at 221 [ (1968) ] (emphasis added).' "
Barter v. Burton Garland Revocable Trust, 124 So.3d 152, 159 (Ala. Civ. App. 2013) (quoting Moss v. Williams, 822 So.2d at 397 ).
Although the deeds at issue in this case do not appear to convey a particular estate in the granting clauses, the language in the habendum clauses and warranty clauses is that of traditional words of inheritance indicating the conveyance of a fee-simple estate.[5] See Hacker v. Carlisle, 388 So.2d 947, 950 (Ala. 1980) (noting that in that case "both the habendum and warranty clauses contain the traditional words of inheritance connoting a fee simple estate," i.e., to the grantee and the grantees' " 'heirs and assigns forever' ").
Cason points to the language "A RIGHT OF WAY AND EASEMENT" used in the description of the property in the deeds and argues that Hubbard acquired only an easement. In Moss, the supreme court reviewed a deed that appeared to convey a fee-simple interest in the granting clause but contained references to a right-of-way in the description of the property being conveyed. The supreme court explained:
"The mere use of the phrase 'right of way,' does not dictate a conclusion that the ... deeds conveyed an incorporeal interest, and not a fee. Rowell v. Gulf, M. & O.R.R., 248 Ala. 463, 28 So.2d 209 (1946), and Schneider v. Mobile County, 284 Ala. 304, 224 So.2d 657 (1969), are instructive. In Rowell, this court construed two deeds as conveying fee-simple interests where the granting clauses in those deeds conveyed a 'tract of land,' but the description of the land referred to the 'right of way herein conveyed.' 248 Ala. at 464, 28 So.2d at 210. Like the deeds at issue here, the deeds in Rowell did not define the nature of the conveyance in the granting clauses. The granting clauses in Rowell provided as follows:
" ' "[F]or the further consideration of the benefits to accrue to us from the construction of a railroad on the strip of land and on the station ground herein conveyed, do grant, bargain, sell and convey unto the said Mobile & Ohio Railroad Company for right of way and station grounds that certain tract of land situated in Mobile County, Alabama, more particularly described as follows, to wit:." '
*1137 " 248 Ala. at 464, 28 So.2d at 210 (emphasis on 'right of way' added). One of the Rowell deeds referred to '[t]he station grounds and right of way herein conveyed and the tract of land herein described.' 248 Ala. at 464, 28 So.2d at 210 (emphasis added). The habendum clauses were identical in each Rowell deed: 'To Have And To Hold unto the said Mobile & Ohio Railroad Company and its successors forever.' 248 Ala. at 464, 28 So.2d at 210 (emphasis added).
"... [T]he granting clause prevails over conflicting introductory statements and over the habendum clause, and [the] conveyance of a fee-simple estate is presumed unless it clearly appears from the deed that a less estate was intended....
"....
"... If the granting clauses convey with certainty a fee simple, then the 'subsequent words ... of doubtful import [e.g., right of way] ... cannot be construed as to contradict the preceding words which are certain.' Johnson [v. Harrison], 272 Ala. [210] at 213, 130 So.2d [35] at 37 [ (1961) ].
"Even if the granting clauses convey an uncertain interest, the use of the phrase 'right of way' in subsequent language of the deeds is not the type of 'lucid, unambiguous language used to express [the grantor's intent],' but, rather, language that is 'merely contradictory or repugnant to that found in [the] granting clause.' Slaten [v. Loyd], 282 [Ala. 485] at 488, 213 So.2d [219] at 221 [ (1968) ]."
Moss, 822 So.2d at 398-99. "Based on the language used in the deeds at issue in Moss, our supreme court determined that the deeds conveyed fee-simple title to the property at issue." Barter, 124 So.3d at 159.
In the deeds at issue in this case, the grantees are given the right of "public dedication" over the roadway, which is entirely consistent with fee ownership and wholly inconsistent with the conveyance of only an easement. Further, the grantees are also conveyed "every other right necessary to ensure the enjoyment and use of the [roadway]," without limitation. Based upon the supreme court's holdings in Moss, and this court's holding in Barter, I do not find the terms "right of way and easement" to be sufficient to defeat what otherwise appears to be the conveyance of a fee interest in the roadway. Therefore, I would reverse the judgment of the trial court as to its finding that Hubbard has only an easement in the roadway.
I concur in that portion of the main opinion declining to review the denial of Hubbard's summary-judgment motion.
The trial court expressly observed that, although Hubbard had raised the issue of his purported ownership of the roadway through his claims against Morrow, Cason never made a claim of any type against Morrow. The trial court expressly held that "there is no legal dispute between [Cason and Morrow] pled nor pending before this [c]ourt" and that Morrow was not bound by any determination made in the litigation with respect to Cason's interest in the roadway. Morrow's failure to answer Hubbard's claims did not serve to establish the validity of any unpleaded claims. See Rule 54(c), Ala. R. Civ. P. ("A judgment by default shall not be different in kind from ... that prayed for in the demand for judgment."); Rule 55(d), Ala. R. Civ. P. ("In all cases a judgment by default is subject to the limitations of Rule 54(c)."). Thus, if Hubbard has only an easement interest in the roadway, I am not clear how Cason could have established a claim of a prescriptive easement against Morrow without having asserted a cross-claim against Morrow. See Melton v. Harbor Pointe, LLC, 57 So.3d 695, 701 (Ala. 2010) (stating that to establish an easement by *1138 prescription the use must be adverse to the owner of the premises and with actual or presumptive knowledge of the owner). Nevertheless, because I would hold that Hubbard properly pleaded a claim against Morrow and established that he was the fee owner of the roadway, I agree with the holding that Cason's claim against Hubbard for a prescriptive easement was tried by the implied consent of the parties under Rule 15(b), Ala. R. Civ. P. I also agree that Cason presented sufficient evidence from which the trial court could find, based on the ore tenus rule, that he had established a prescriptive easement in the roadway. Therefore, I concur in the result as to that holding in the main opinion.
Thomas, J., concurs.

Although the notice of appeal lists James, Austin, Caldwell, and William as appellees, only James and Austin have filed a brief with this court.

The August 11, 1986, deed transferred the roadway, along with additional property, in undivided 1/3 interests each to Hubbard, Joseph G. Hubbard, and Raiford A. Tomlin and Nancy H. Tomlin. Hubbard later acquired the interests of Joseph G. Hubbard and the Tomlins in the roadway.

To the extent Judge Donaldson, in his special writing, questions whether James could establish his claim for a prescriptive easement without including as a party the fee owner of the roadway, we note that the trial court determined that William was the owner of the roadway, that William was named as a defendant, that a default judgment was entered against William, and that William is named as a party to this appeal. Although Hubbard challenges on appeal the trial court's determination that James is entitled to an easement in a portion of the roadway by adverse possession, he fails to argue that James could not establish his claim for a prescriptive easement as to Hubbard when William is the owner of the roadway. "It is not the function of an appellate court ... to create and support an argument on behalf of an appellant." S.S. v. Jefferson Cty. Dep't of Human Res., 154 So.3d 1049, 1051 (Ala. Civ. App. 2014). Accordingly, we decline to further address any issues not raised on appeal with regard to James's entitlement to an easement in the roadway, pursuant to adverse possession.

The grantees in the August 11, 1986, deed were Hubbard, Joseph G. Hubbard, Nancy H. Tomlin, and Raiford A. Tomlin. James Hubbard subsequently acquired the interests of Joseph G. Hubbard, Nancy H. Tomlin, and Raiford A. Tomlin in the roadway.

The habendum clause in each deed and the warranty clause in each deed state that the grantor and their heirs "covenant with the said [grantee] and their heirs ... that [the grantor is] lawfully seized in fee simple ... [and] have a good right to sell and convey the same as aforesaid" and "will warrant and defend against the same."